UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WILLIAM SHANKLE,

                        Plaintiff,

     -against-                      MEMORANDUM AND ORDER
                                            06-CV-487 (NG) (LB)
OFFICER DEREK ANDREONE,
OFFICER DANIEL CALLOW, and
OFFICER ROBERT CABAN

                        Defendants.
-------------------------------------------------------x

**GERSHON, United States District Judge:**

Plaintiff William Shankle, appearing <u>pro se</u>, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that defendants Detective Derek Andreone, Officer Daniel Callow and Sergeant Robert Caban (collectively, "defendants"), of the New York City Police Department, used excessive force during his arrest and subsequently deprived him of medical attention, in violation of his constitutional rights. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, the court grants defendants' motion in part and denies it in part.

**Facts**

<u>The Arrest</u>

As an initial matter, defendants' statement of the facts submitted pursuant to Local Rule 56.1 is based largely on inadmissible evidence. For example, the description of the arrest of plaintiff set forth in the Rule 56.1 Statement is drawn primarily from interviews of defendants conducted by New York City's Civilian Review Board ("CCRB") between seven and eight months after the events underlying this suit. There is no indication that these out-of-court

1

statements were given pursuant to any oath or under penalty of perjury. No sworn affidavit or affirmation from any of the defendant officers has been submitted. Therefore, defendants' version of the facts will be considered only insofar as it is based on admissible evidence, and is not disputed.[1]  See Alfano v. NGHT, 623 F. Supp. 2d 355, 362 (E.D.N.Y. 2009).

On May 5, 2004, at 9:43 p.m., the New York City Police Department was contacted by a person claiming that he had been attacked, with gunshots fired, on Farragut Road in Brooklyn, New York, by a black male wearing all black and a "hoodie." (Castro Decl. Exh. G (911 Emergency Sprint Report, dated May 5, 2004).) Plaintiff, a black male, concedes that, on the day of the incident, he was in that neighborhood and wearing dark jeans, a black shirt, a black hooded sweat jacket and black sneakers. (Deposition of William Shankle, dated May 24, 2007, ("Shankle Dep.") at 59:5-8.)

According to the "Complaint Report" related to the arrest of plaintiff, defendants witnessed plaintiff running with a firearm, prior to his arrest, when plaintiff turned to one of the defendant officers and said, "I'll fucking shoot you." (Castro Decl. Exh. N., Police Complaint Report.) Plaintiff was subsequently arrested by defendants. (Id.)

Plaintiff disputes defendants' version of the events, claiming instead that he was not armed. (Affirmation of William Shankle, dated October 12, 2007 ("Shankle Aff."), at ¶ 18.) Rather, plaintiff states that, after leaving a grocery store, while in the Glenwood Housing

---

[1] Although conclusions of a CCRB have been held, by some district courts, to be admissible evidence, pursuant to Rule 803(8) of the Federal Rules of Evidence, see, e.g., Williams v. McCarthy, No. 05-CV-10230, 2007 WL 3125314, at *5 (S.D.N.Y. Oct. 25, 2007), and Hill v. The City of New York, No. 03-CV-1283, 2005 WL 3591719, at *4 n.1 (E.D.N.Y. Dec. 30, 2005), here, defendants offer only statements made by police officers to the CCRB as part of the investigation rather than the conclusions or findings of that agency. See Ariza v. City of New York, 139 F.3d 132, 134 (2d Cir. 1998) ("[R]eports which do not contain factual findings resulting from a factual investigation are not covered by Fed.R.Evid. 803(8)(C).").

projects, he was approached by defendants and informed that "he fit a description." (Id. at ¶¶ 6-7.) According to plaintiff, after being handcuffed, and while laying on the ground, he asked why he was being arrested. (Id. at ¶ 7.) Following this question, plaintiff claims (i) he was "kicked in my ribs"; (ii) an officer stood on his back; (iii) his head was held up by two officers, so a third could spray mace into his face; (iv) his face was "mushed into the ground"; and (v) he was hit in the head with a sharp object <u>after</u> being handcuffed. (Id. at ¶ 10; Shankle Dep. 117:7-9.) Because plaintiff claims to have been face down during the arrest, he was unable to identify which of the arresting officers committed each act. (Shankle Aff. ¶ 10.) According to plaintiff, the arrest lasted "a minute or two." (Shankle Dep. 126:4-9.)

<u>Medical Attention</u>

According to plaintiff, he suffered injuries stemming from his arrest and was forced to "beg for medical attention for at least 45 min[utes] to an hour." (Shankle Aff. ¶ 10.) The Arrest Report of plaintiff states that he was arrested at approximately 9:57 p.m. (Castro Decl. Exh. J., Police Arrest Report.) An "Ambulance Call Report" states that an ambulance was called for the plaintiff at 10:17 p.m., that an ambulance arrived at 10:21 p.m. and that plaintiff was then treated by Emergency Medical Services ("EMS"). (Castro Exh. O., F.D.N.Y. Ambulance Call Report.) Plaintiff complained to EMS that he had "a cut." (Id.) During the course of the examination, EMS noted a "1/2 inch laceration" on the top of the plaintiff's scalp as well as abrasions on his left knuckles. (Id.)

Plaintiff was transported to Kings County Hospital Center by 11:15 p.m. (Castro Exh. P., Kings County Hospital, Emergency Nursing Record.) After further examination at the hospital, the treating physician noted that plaintiff had contusions on his left hand, right knee and chest. (Id.) The hospital physician also closed a two centimeter wound in plaintiff's scalp with five

3

staples. (Id.) Plaintiff was given Motrin and discharged to the custody of the New York City Police Department. (Id.) Plaintiff has a scar on his scalp which he contends is a result of the staples received that evening. (Shankle Dep. 177:1-13.)

The arrest report reveals that the initial radio call concerning shots fired was incorrect and that plaintiff was alleged to have robbed and carjacked the victim at gunpoint, with no shots fired. (Castro Decl. Exh. J., Police Arrest Report.)

Plaintiff was convicted in New York Supreme Court, Kings County, following a jury trial, of Robbery in the Second Degree, and was sentenced to a term of twelve years of incarceration.

## Discussion

Standard

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322; Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995). The burden is on the moving party to demonstrate that there are no material facts genuinely in dispute. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. See Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d. Cir. 2000).

Where a pro se litigant is involved, "the court has an obligation to read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments they suggest." Thomas v. Keane, No. 99-CV-4302, 2001 WL 410095, at *8 (S.D.N.Y. April 23, 2001); see also Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (citing Burgos v. Hopkins, 14

4

F.3d 787, 790 (2d Cir. 1994)). It is true, however, that "bald assertions" cannot overcome a motion for summary judgment, and the court must have "some basis to believe that [the plaintiff's] version of the relevant events is not fanciful." Podell v. Citicorp Diners Club, 112 F.3d 98, 101 (2d Cir. 1997); Yearwood v. LoPiccolo, No. 95-CV-2544, 1998 WL 474073, at *3 (S.D.N.Y. Aug. 26, 2003).

*Local Civil Rule 56.1*

Defendants contend plaintiff has "failed to properly oppose summary judgment" by presenting admissible evidence in a Local Rule Civil Rule 56.1(a) Statement, and that summary judgment should be granted on this ground. The court disagrees.

First, plaintiff did file a "Plaintiff's Affirmation in Opposition to Defendant's Summary Judgment Motion." While this affirmation may refer to certain documents which are not admissible evidence (e.g., questions asked by the plaintiff in his interrogatories and references to the purported knowledge of an unidentified witness who has not been deposed), the affirmation also references and attaches medical records and deposition testimony which plaintiff contends disputes defendants' positions. The court will rely only on those portions of plaintiff's submission which are properly submitted. Second, even where a plaintiff fails to submit any statement or affirmation, this omission would not, standing alone, result in a favorable judgment for the defendants because the record before the court on a summary judgment motion must be reviewed even if unopposed. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

*Heck v. Humphrey*

Defendants argue that the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), provides a basis for granting summary judgment against plaintiff. Specifically, defendants claim that plaintiff is barred from bringing claims arising from his arrest without a showing that his conviction was invalidated. Under Heck, a plaintiff who files a Section 1983 action seeking damages for unconstitutional conviction or imprisonment must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87. A court reviewing a Section 1983 claim is to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." Id. at 487. However, if a "plaintiff's action, even if successful will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id. Here, the claims of excessive force used during an arrest and for unlawful deprivation of medical assistance will not cast doubt on the lawfulness of plaintiff's conviction. Therefore, Heck has no applicability and defendants' Heck argument is rejected. See Dockery v. Tucker, 73 F. Supp.2d 224, 234 (E.D.N.Y. 1998) ("[T]he Heck court singled out Fourth Amendment cases as examples of suits where a federal court's finding of a constitutional violation would not necessarily imply that the prior conviction was unlawful." (citing Heck, 512 U.S. at 487 n.7.)).

Excessive Force Claim

Next, defendants maintain that summary judgment is appropriate because there is no issue of material fact that, under the totality of the circumstances, the force used during the arrest was reasonable.

A person has a Fourth Amendment right to be free from excessive force, even during the course of an arrest. Graham v. Connor, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the arresting officers were not "'objectively reasonable' in light of the facts and circumstances as presented to [the officers] at the time of the [p]laintiff's arrest." Graham, 490 U.S. at 397; Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995). Whether the officers' actions were reasonable depends on a fact-intensive inquiry which takes account of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396-97. Summary judgment will not be granted against an excessive force claim where "there are facts in dispute that are material to a determination of reasonableness." Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001).

While the force used must be more than de minimis to be actionable, "a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment." Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004); Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable or excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe"); see also Li v. Aponte, No. 05-CV-6237, 2008 WL 4308127, at *9-*10 (S.D.N.Y. Sept. 16, 2008). Indeed, where a plaintiff complained of shoulder pain and dizziness which was corroborated by bruising on the plaintiff's upper arm, the "bruising alone [was] sufficient to preclude summary judgment." See id.; see also Griffin v. Crippen, 193 F.3d 89, 91-92 (2d Cir. 1999) (finding error where the district court ruled, on an 8th Amendment excessive force claim,

7

that the plaintiff's injuries were de minimis because the only allegations were of a "bruised shin and swelling" of the knee).

Here, plaintiff has demonstrated, through sworn deposition testimony and medical records, issues of material fact as to the reasonableness of the force used by defendants. First, plaintiff does not concede that he resisted arrest; rather, he maintains that he was subjected to force merely for questioning the cause of his arrest. Cf. Jackson v. City of New York, No. 01-CV-10116, 2005 WL 1538205, at *4 (S.D.N.Y. June 29, 2005) (finding force to be reasonable where the plaintiff admitted that "he and the Detective were 'going at it' at the time of his arrest"). Second, plaintiff asserts that he was struck on the head by one of the defendant officers with a hard object. (Shankle Aff. ¶ 10.) This contention is supported by medical records showing that plaintiff suffered a laceration on his scalp, reported at various places in the record to have been between two centimeters and one-half inch. Five staples were required to close the cut. In addition, plaintiff testified, at his deposition, that he was hit on the head after he had been handcuffed. See Espada v. Schneider, 522 F.Supp.2d 544, 555-556 (S.D.N.Y. 2007) (noting that "there is no objective justification" for striking an arrestee after he is handcuffed and subdued). Also at deposition, plaintiff identified, on the record, a scar which he contends resulted from being struck by the defendant officers. (Shankle Dep. at 177:1-13.) Third, plaintiff maintains he was kicked in the ribs during the arrest—in addition to having been sprayed with mace and having one of three officers stand on his back—and a portion of the plaintiff's medical records show that he suffered bruising to his side.[2] In light of the affirmation of plaintiff, deposition

---

[2] Defendants appear to contend that plaintiff must "prove that the laceration and contusion were not the result of the car accident." However, it is not plaintiff's burden to disprove each possible alternate explanation on summary judgment, and it is not the place of this court to resolve this factual question on this motion.

8

testimony, and medical records, the court cannot find that plaintiff's injuries were de minimis or that the force used by defendants was reasonable.

*Qualified Immunity*

Nor are defendants entitled to summary judgment on the ground of qualified immunity. A government official is entitled to qualified immunity,

> (1) if the conduct attributed to him is not prohibited by federal law or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the conduct; or (3) if the defendant's action was 'objectively legally reasonable' . . . in light of the legal rules that were clearly established at the time it was taken.

O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003). There is no question that the excessive force alleged by plaintiff is prohibited conduct. See Graham, 490 U.S. at 395. Therefore, defendants are entitled to qualified immunity only if their actions were objectively reasonable. In light of the court's determination that a material issue of fact exists as to the reasonableness of the force used by defendants, the court cannot find that the actions of the officers were objectively reasonable for the purpose of qualified immunity. See O'Bert, 331 F.3d at 37 ("[I]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits."); Cerbilli v. City of New York, No 99-CV-6846, 2008 WL 4449634, at *11-*12 (E.D.N.Y. Oct. 1, 2008) ("[T]he existence of a genuine issue of material fact precludes the court from granting summary judgment on the basis of qualified immunity"). Therefore, qualified immunity cannot be found as a matter of law.

*Personal Involvement*

Finally, defendants argue that summary judgment is appropriate because plaintiff is unable to identify the particular officers who subjected him to excessive force. This argument is also rejected.

To succeed on a Section 1983 claim of deprivation of a constitutional right, a plaintiff must establish the personal involvement of the defendants. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). "Personal involvement" is a question of fact, governed by the general rule that summary judgment may be granted only if no issues of material fact exist. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Although personal involvement may be satisfied by evidence of direct participation, it may also be proved by, among other things, a defendant's failure to remedy an alleged constitutional violation after learning of it or a defendant's gross negligence in managing subordinates. See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004); Lehman v. Kornblau, 134 F.Supp.2d 281, 288 (E.D.N.Y. 2001). Indeed, "if the defendants who were present at the scene, failed to intercede on [the plaintiff's] behalf, they could still be found liable for this incident." Id.; see also Younger v. City of New York, 480 F. Supp. 2d 723, 737 (S.D.N.Y. 2007).

Notably, an arrestee's "inability to positively identify those who allegedly violated his rights is not per se fatal to his claims." Davis v. Callaway, No. 3:05-CV-00127, 2007 WL 1079988, at *8 (D.Conn. April 9, 2007); Munoz v. Martinez, No. 03-CV-0828, 2005 WL 1355094 (S.D.N.Y. June 8, 2005) ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene.") (internal citation omitted). This is especially true where the acts complained of by the plaintiff, if true, (e.g., mace to the eyes, standing on back, "mushing" face into the ground) are likely to have prevented

10

plaintiff from identifying which of three defendant officers specifically engaged in the bad acts. See Davis, 2007 WL 1079988, at *9 ("Davis' [sic] claims do not necessarily fail, though, simply because he, after being sprayed with [pepper spray], could not identify those policemen who dropped him.").

While the question of whether the ranking officer would have had an opportunity to intercede during the incident alleged in this case which, plaintiff admits, lasted only a "minute or two", may be a close one, see Johnson v. City of New York, No. 05-CV-7519, 2008 WL 4450270, at *6 (S.D.N.Y. September 29, 2008) (officers could not have interceded where the improper act last only "couple of seconds"), given that plaintiff has testified that all three officers were involved, the court cannot grant summary judgment based on a lack of personal involvement or inability to intercede.

Indifference to Medical Needs

Plaintiff alleges that defendants ignored his need for medical care in violation of his constitutional rights. Plaintiff, as an arrestee, was protected from deliberate indifference to any serious medical needs by the Due Process Clause of the Fourteenth Amendment. See Caiozzo v. Koreman, No. 05-CV-4002, 2009 WL 2998338, at *4 (2d Cir. Sept. 22, 2009). To survive a motion for summary judgment on this claim, plaintiff must demonstrate a genuine issue of material fact concerning whether the arresting officers disregarded a risk of harm to the plaintiff of which the arresting officers were aware. See id. at *6. Plaintiff has failed to make such a showing.

Plaintiff has proffered evidence that he was sprayed with mace and suffered a head wound variously described in the medical records as a two centimeter or one-half inch laceration. Although plaintiff contends he was forced to "beg for medical attention for 45 min[utes] to an

hour," documentary evidence submitted by both plaintiff and defendants demonstrates that the officer defendants called an ambulance on behalf of the plaintiff within twenty minutes of the arrest and that plaintiff was treated by an ambulance EMS worker promptly thereafter. Further, within an hour of the arrest, plaintiff was transported to a hospital for additional medical care where he was examined, given Motrin and discharged.

Even crediting plaintiff's claim that he waited forty-five minutes to an hour for medical care, the timing of these events does not establish a disregard of a risk to plaintiff or "deliberate indifference" to his medical needs. See Basnight v. Rossi, No. 97-CV-1312, 2003 WL 722810, at *2 (E.D.N.Y. March 4, 2003) (granting summary judgment against a claim of deliberate indifference where plaintiff received treatment, including six stitches, within four hours of his arrest); see also Perkins v. Brown, 285 F. Supp.2d 279 (E.D.N.Y. 2003) (summary judgment is appropriate where the plaintiff was "brought to the infirmary shortly after the incident"). Rather, the record establishes that defendants took adequate steps to ensure the medical treatment of the plaintiff. Accordingly, defendants' summary judgment motion should be granted on this claim.[3]

---

[3] To the extent plaintiff complains of lack of treatment at a Rikers Island facility, the officer defendants he has named are not responsible.

## Conclusion

Defendants' motion for summary judgment is granted on the medical care claim and denied on the excessive force claim.

**SO ORDERED.**

/s/ Nina Gershon
Nina Gershon, U.S.D.J.

Dated: September 25, 2009
Brooklyn, NY